**UNITED STATES of America, Appellee,**

v.

**Daniel MORTIMER, Defendant–Appellant.**

**No. 360, Docket 94–1163.**

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1994.

Decided April 12, 1995.

Joseph Fahey, Syracuse, for defendant-appellant.

Edward R. Broton, Asst. U.S. Atty., Syracuse (Thomas J. Maroney, U.S. Atty., N.D.N.Y.), for appellee.

Before: OAKES, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Defendant-appellant Daniel Mortimer appeals from a sentence imposed following his plea of guilty to unlawfully transporting a firearm in interstate commerce (26 U.S.C. § 5861(j)), and carrying an explosive during the commission of a felony (18 U.S.C. § 844(h)). The United States District Court for the Northern District of New York (Munson, *J.*) sentenced Mortimer to consecutive prison sentences of 51 months on the 26 U.S.C. § 5861(j) charge and 60 months on the 18 U.S.C. § 844(h) charge, and ordered him to pay restitution in the amount of $28,303.50. Mortimer, now incarcerated, challenges (A) the assignment of criminal history points for a state felony conviction where the offense (possession of a small quantity of marijuana) is no longer punishable by that state as a felony; (B) the assignment of separate criminal history points for two unrelated convictions for which Mortimer served concurrent sentences; (C) the imposition of consecutive sentences, pursuant to the plea agreement, assertedly in violation of the Double Jeopardy Clause; (D) the ordering of restitution in excess of $28,000, payable immediately, in light of Mortimer's financial ability to pay and the extent of his victims' unreimbursed losses; and (E) Mortimer's classification as an "organizer" under Sentencing Guideline § 3B1.1(c).

We vacate the restitution order and remand for reconsideration consistent with this opinion. In all other respects, we affirm.

## BACKGROUND

Mortimer, along with one or both of his co-conspirators, was involved in five break-ins of banks and department stores in New York, Pennsylvania and Vermont between December 3, 1990 and August 5, 1991. Each time, the burglars used the technique (which succeeded only once) of blowing the safe open with an explosive after filling it with water to protect the contents from the blast.

On April 21, 1993, a federal grand jury issued a nine-count indictment naming as defendants David Vann, appellant Mortimer and his brother Philip. Mortimer entered a guilty plea on December 1, 1993.[1] Under his plea agreement, Mortimer pleaded guilty to two counts arising from the burglary of a Jamesway Department Store in Tamaqua, Pennsylvania.

Mortimer and Vann traveled to Tamaqua on December 24, 1990. That night Mortimer cut the telephone lines to the Jamesway building, causing an alarm to sound in the local Police Department. Mortimer and Vann hid nearby, observed the police response, and postponed the burglary.

The co-conspirators were more successful the next night. Early in the morning of December 26, Vann entered the building, drilled a small hole in the store safe, sealed the seams of the safe with "body filler" and filled it with water. Mortimer then entered the store and inserted a nitroglycerine charge into the safe. The charge blew off the door without damaging the money protected by the water inside. Mortimer and Vann returned to Liverpool, New York where they split the $22,960 removed from the safe.

Mortimer pleaded guilty to one count of transporting an unregistered firearm (the nitroglycerine) in interstate commerce in violation of 28 U.S.C. § 5861(j) and to one count of using and carrying an explosive during the commission of a felony in violation of 18 U.S.C. § 844(h).[2] Under the plea agreement, the sentences imposed for the two convictions would run consecutively. Mortimer agreed to make restitution in the amount of $56,000. The government agreed to dismiss the remaining eight counts of the indictment.

Mortimer was sentenced March 8, 1994. Using the 1990 edition of the Guidelines Manual, the district court found a base offense level of 18 for transportation of a firearm in violation of 18 U.S.C. § 5861(j). Under § 3E1.1(a), the court subtracted two offense levels for acceptance of responsibility, then added two offense levels because he was an "organizer" under § 3B1.1(c). Mortimer's adjusted offense level was therefore 18. After considering his prior criminal record, including a 1976 New York State felony conviction and an unrelated 1976 Pennsylvania conviction, the court assigned Mortimer a criminal history score of nine, placing him in criminal history category IV. For a level 18 offense committed by a person with a criminal history category of IV, the appropriate Guideline Range is 41 to 51 months. The court rejected the prosecution's request for an upward departure, but sentenced Mortimer to the maximum 51 months on the § 5861 charge.

On the 18 U.S.C. § 844(h) charge, use of an explosive during the commission of a felony, the court sentenced Mortimer to 60 months. The underlying felony was the interstate transportation of stolen property (the waterlogged cash) in violation of 18 U.S.C. § 2314. Under § 844(h), the term of imprisonment is the term mandated by statute and is not specifically determined by reference to the Guidelines. Section 844(h) provides that this mandatory five-year term must be served "consecutively with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried."

The court ordered restitution in the amount of $28,303.50, approximately one-half the amount that Mortimer consented to pay in the plea agreement.

---

**1.** Both defendant's brother, Philip, and David Vann also ultimately entered guilty pleas.

**2.** This § 844(h) count was not listed in the original indictment but was contained in a separate Information filed at the time of the guilty plea.

## DISCUSSION

### A. *The 1976 Marijuana Conviction.*

In computing Mortimer's criminal history points under Sentencing Guideline § 4A1.1, the district court assigned three points on account of a 1976 New York State felony conviction for possession of marijuana. Under § 4A1.2(e) of the Sentencing Guidelines, convictions that are more than ten years old (but less than 15) can be used in determining criminal history points only if the conviction resulted in a sentence greater than one year and one month:

#### (e) *Applicable Time Period*

(1) *Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.* Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

(Emphasis added.)

In his brief on appeal, Mortimer claims that his 1976 conviction was for the possession of 2.3 ounces of marijuana.[3] In 1977, New York State changed the classification for possession of less than eight ounces of marijuana from a Class C Felony to a misdemeanor, which is not punishable with a sentence of imprisonment as severe as one year and one month. *See* New York Penal Law § 70.15, 221.15 (McKinney 1988). Mortimer invites us to conclude that federal courts must assign criminal history points for state convictions under the state law existing at the time of the federal sentencing rather than as it existed at the time the defendant's state sentence was imposed. If that rule were adopted in this case, the district court would have had to disregard the 1976 marijuana charge, thereby reducing defendant's criminal history score.

Mortimer relies upon the Sixth Circuit opinion in *United States v. Morton,* 17 F.3d 911, 914–15 (6th Cir.1994). In *Morton,* the Sixth Circuit considered whether the defendant's five previous Tennessee drug offenses were "serious drug offense[s]" within the meaning of 18 U.S.C. § 924(e)(1). Persons convicted under § 924 who have *three* previous convictions for serious drug offenses receive a mandatory minimum sentence of 15 years imprisonment. A serious drug offense under § 924 is one "for which a maximum term of imprisonment of ten years or more is prescribed by law." All five of defendant Morton's earlier convictions carried maximum terms of imprisonment exceeding ten years. However, by the time of Morton's sentencing on his § 924 conviction, Tennessee had amended its drug laws so that at least two (and possibly more) of defendant's previous drug crimes could no longer be punished by such lengthy jail terms.[4] The *Morton* court therefore had to decide whether to consider these five offenses under current Tennessee law or under Tennessee law as it existed at the time of the original state sentencing.

The Sixth Circuit recognized the possible ambiguity in § 924, and then resolved the ambiguity through application of the rule of lenity:

What is evident ... is that section 924(e)(2)(A)(ii), by looking to state sentencing law, leaves the standard by which to judge the seriousness of a state drug conviction to the policy of the state. At the time defendant was being sentenced in this

---

3. Appellees contest this factual assertion on the ground that Mortimer has offered no proof as to the precise quantity of marijuana he possessed in 1976. Since we reject Mortimer's legal argument, we have no need to resolve this factual dispute.

4. The record on appeal demonstrated that two of the five offenses involved less than 0.5 grams of cocaine, a crime punishable under the revised Tennessee law by *less* than 10 years imprisonment. The record available to the appellate court did not indicate the amount of cocaine involved in the other three offenses.

case, the State of Tennessee did not consider [Morton's offenses] serious enough to impose a ten-year sentence.... The question is at least ambiguous and therefore, under the rule of lenity, should be resolved in defendant's favor.

*Morton,* 17 F.3d at 915. *See United States v. R.L.C.,* 503 U.S. 291, 305–06, 112 S.Ct. 1329, 1338, 117 L.Ed.2d 559 (1992); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) ("when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite" (citations and internal quotations omitted)). Since under this analysis at least two of Morton's five previous convictions no longer qualified as "serious drug offense[s]," the Sixth Circuit remanded the case to the district court with instructions to resentence the defendant after determining the seriousness of the remaining three state convictions under current Tennessee law.

■ We are unpersuaded that the *Morton* analysis has bearing on this case. The fundamental ground of distinction is that the Guidelines are not ambiguous and that, absent ambiguity, the rule of lenity does not apply. *See R.L.C.,* 503 U.S. at 305–06, 112 S.Ct. at 1338; *United States v. Eng,* 14 F.3d 165, 173 n. 7 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994). The Guidelines require the counting of "[a]ny prior sentence of imprisonment exceeding one year and one month, that was imposed within 15 years of the defendants commencement of the instant offense." § 4A1.2(e)(1). Fourteen years before the Jamesway burglary, a "sentence of imprisonment exceeding one year and one month ... was imposed" on Mortimer. Mortimer's marijuana sentence is thus squarely encompassed by the unambigu-

ous language. Just as clearly, none of the listed exceptions applies. Under the terms of the Guidelines, the only convictions that should be excluded from the computation of criminal history are those that have been expunged, § 4A1.2(j), "reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or ... have been ruled constitutionally invalid in a prior case." § 4A1.2, Application Note 6. The Guidelines make no additional provision for a state's re-classification of an offense for which a defendant has previously been convicted and sentenced.[5]

■ We reject Mortimer's argument that this result is necessarily arbitrary or unfair. We have not undertaken to find out why the New York legislature has reclassified the possession of small amounts of marijuana as a misdemeanor; but that is not a simple question. Sometimes the same act may be deemed more harmful or less harmful depending on when the act is committed: failure to register for a military draft may be a more serious offense punished more harshly during a time of war than in peacetime. Sometimes a reduced penalty may reflect a redirection of resources rather than a more benign view of the offense: a community may view the sale of marijuana with undiminished alarm even while the prevalence of more pernicious drugs forces the reallocation of law enforcement resources in other directions and the reservation of jail space for other offenders.

We therefore hold that a district court counting criminal history points should consider the state sentence that is actually imposed upon a defendant (unless, of course, one of the § 4A1.2 exceptions applies) without regard to whether the offense has subsequently been reclassified by the state.[6]

---

5. We do not consider whether the circumstances presented by this case might furnish a district court grounds for a downward departure. *See* § 5K2.0; *United States v. Watson,* 952 F.2d 982, 990 n. 4 (8th Cir.1991) (considering application of departure provisions of the Guidelines to an appeal involving § 4A1.2), *cert. denied,* 503 U.S. 994, 112 S.Ct. 1694, 118 L.Ed.2d 406 (1992). At the sentencing hearing Mortimer's counsel expressly declined to seek a downward departure: "I have not asked the Court to depart down-

ward." *See* Transcript of Sentencing Hearing at 8, Joint Appendix at 78. Furthermore, we note that the district court sentenced Mortimer at the top of the permissible range on the 5861(j) charge, signifying the lack of any disposition to depart downward.

6. The government emphasizes that Mortimer did not take steps in state court to vacate or expunge his 1976 sentence, a failure the government deems significant in light of *United States v.*

**B.** *The Previous Sentences Served Concurrently.*

■ In addition to the 1976 New York State conviction for the marijuana possession, the district court also assigned Mortimer criminal history points for a 1976 burglary conviction in Pennsylvania. Mortimer claims it was error for the district court to treat the New York and Pennsylvania convictions as unrelated cases for Guidelines purposes because the sentences imposed for the two crimes were set to run concurrently.

Section 4A1.2(a)(2) states:

Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of [computing criminal history points].

The issue turns on the definition of related cases. Application Note 3 to Guidelines § 4A1.2 states:

[P]rior offenses are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Mortimer contends that his two separate crimes were "consolidated for sentencing," and that the district court therefore should not have counted each sentence separately. We disagree.

■ The concurrent running of sentences does not amount to consolidation for sentencing. Mortimer's two sentences were imposed by different courts in two different states on two different dates in 1976. Unless there is a close factual nexus between the two convictions, the imposition of concurrent sentences does not establish that the convictions were consolidated. *United States v. Lopez,* 961 F.2d 384, 387 (2d Cir.1992).

*Beaulieu,* 959 F.2d 375, 380–81 (2d Cir.1992). In *Beaulieu,* the district court considered a prior sealed juvenile criminal conviction in computing a sentence under the Guidelines. In reversing the district court, this Court held that the reversal was based on the fact that, by seeking to seal the record in the juvenile case, the defendant had done all he could to vacate or expunge the conviction.

**C.** *Double Jeopardy.*

Mortimer argues that his offenses under 28 U.S.C. § 5861(j) and 18 U.S.C. § 844(h) arise out of the same transaction and constituted a single offense, and that the district court's imposition of consecutive sentences therefore violates the Double Jeopardy Clause.

■ Generally, the rights afforded by the Double Jeopardy Clause are personal and can be waived by a defendant. *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *United States v. Perez,* 565 F.2d 1227, 1232 (2d Cir.1977) ("The constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived."). Mortimer's signed plea agreement provided that he would plead guilty to two felonies, thereby effecting waiver of the claims he now asserts on appeal. *See Dermota v. United States,* 895 F.2d 1324, 1325 (11th Cir.), *cert. denied,* 498 U.S. 837, 111 S.Ct. 107, 112 L.Ed.2d 78 (1990). Moreover, the plea agreement specifically provides that the sentences for the two crimes would run consecutively. Since we conclude that this issue was waived, we do not reach the merits of defendant's double jeopardy challenge.

**D.** *Restitution.*

Mortimer generally challenges the amount of the district court's award of restitution, the sufficiency of the findings that support it, and the requirement for immediate payment. We conclude that the district court gave adequate consideration to Mortimer's financial status as required under 18 U.S.C. § 3664(a), but erred by failing to consider (1) the effect of this financial status on his ability to pay the restitution immediately and (2) pursuant to 18 U.S.C. § 3663(e)(1), the significance of

The government's argument may overstate the significance of *Beaulieu.* While the *Beaulieu* Court considered the defendant's success in taking every possible step to eliminate the effect of his juvenile conviction, the Court did not address the issue of how it would rule if every step had not been taken. Furthermore, it is not altogether clear what Mortimer might have done to vacate a sentence legally entered in 1976. In doing nothing, Mortimer may have done all he could.

any payments made by third parties to the victims of Mortimer's crimes. We therefore vacate the district court's order of restitution and remand for reconsideration consistent with this opinion.

In *United States v. Helmsley,* 941 F.2d 71, 102 (2d Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992), we held that a defendant who adopts the figures used in a pre-sentence report in argument before the district court, without registering an objection to them, has waived any right to challenge the amount of restitution on appeal. More recently, however, we have held that "because '[i]mproperly ordered restitution constitutes an illegal sentence and amounts to plain error,' " the failure to object before the district court "is not a bar to [appellate] review." *United States v. Soto,* 47 F.3d 546, 550 (2d Cir.1995) (citing *United States v. Coleman,* 9 F.3d 1480, 1486 n. 4 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1234, 127 L.Ed.2d 578 (1994)). Mortimer's challenges to his sentence are therefore reviewed as though an objection had been timely interposed.

■ Mortimer argues that the district court inadequately considered his financial situation. Although a sentencing court is not required to set forth its findings in detail, the record must reflect that it has considered the statutorily mandated factors. *United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993). Under § 3664(a), the sentencing court must consider:

■ the amount of loss sustained by any victim as a result of the offense, [2] the financial resources of the defendant, [3] the financial needs and earning ability of the defendant and the defendant's dependents, and [4] such other factors as the court deems appropriate.

■ We have recently held that the fact that a pre-sentence report examines a defendant's financial status does not, in and of itself, satisfy the requirement of § 3664(a) that the court consider the defendant's financial capacity and prospects. *Soto,* 47 F.3d at

551. Rather, there must be "an affirmative act or statement allowing an inference that the district court in fact considered the defendant's ability to pay." *Id.* The transcript of Mortimer's sentencing hearing indicates that the district court met *Soto*'s requirements. The court addressed restitution on one page of the transcript and within moments, on the next page, declined to impose a fine on Mortimer. In declining to impose the fine, the district court noted that it had "consider[ed] [his] present financial condition." Joint Appendix ("JA") at 85. This statement supports an inference that the court had considered the defendant's financial ability prior to the hearing, and had that in mind when the court ruled on restitution and fines. Furthermore, the court was also aware that in his plea agreement Mortimer consented to pay up to $56,000 in restitution.[7]

■ The fact that Mortimer may have limited financial resources does not render the order of restitution an abuse of discretion. Even an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually acquired. *See United States v. Porter,* 41 F.3d 68, 70 (2d Cir.1994); *United States v. Gelb,* 944 F.2d 52, 57 (2d Cir.1991). We find no error in the district court's determination of the total amount it ordered Mortimer to pay as restitution.

■ Nevertheless, we conclude that the court abused its discretion in requiring that Mortimer—who filed a personal financial statement listing no assets—pay the restitution immediately. While restitution orders are often scheduled to be paid upon imposition of a defendant's sentence, *see* 18 U.S.C. § 3663(f)(3), nothing before the district court suggested that Mortimer would be able to pay this significant amount of restitution immediately. *See United States v. Clark,* 901 F.2d 855, 857 (10th Cir.1990) ("There must be an evidentiary basis for a proper exercise of discretion."). On remand, the district court should devise a reasonable payment schedule.[8]

---

7. Co-defendant David Vann was also ordered to pay a portion of the $56,000 in restitution.

8. Appellant notes in his brief that he has entered into an agreement with the Bureau of Prisons under which he pays $25 a month toward his

 Mortimer also claims that the current award of restitution allows his victims to be compensated in excess of their actual loss. We agree that the district court erred in failing to consider, pursuant to 18 U.S.C. § 3663(e)(1), whether the victims of Mortimer's crimes may have already received compensation for their losses from third parties, such as insurers. Congress "has mandated that restitution not result in double recovery by crime victims." *United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir.1986).[9] Section 3663(e)(1) states in pertinent part that:

> [t]he court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation. An order of restitution shall require that all restitution to victims under such order shall be made before any restitution to any other person under such order is made.

Even in cases in which "the defendant, the victims, the government, and the [district] court" neglect to take note of the dictates of § 3663, an appellate court must vacate the order of restitution because "it is imperative that restitution not be imposed without the court's considering third-party payments." *Atkinson,* 788 F.2d at 904.

The government argues that the total size of Mortimer's restitution obligation will not be affected by the existence of third party payments because, under § 3663, Mortimer would still be obliged to compensate the third parties for any such payments. *See Atkinson,* 788 F.2d at 904 ("the fact of third party payments need not reduce the restitution amount defendants are ordered to pay, since restitution to the third party may also be ordered"); *United States v. Golomb,* 811 F.2d 787, 792 (2d Cir.1987) (such oversight does not require reversal of the order of

restitution but rather a mere redistribution of the proceeds). The government suggests that the United States Attorney be charged with adjusting the distributions to the various victims and third parties in accordance with § 3663. While the district court's order does provide that restitution is to be paid through the United States Attorney's office, the order also requires that the restitution paid by Mortimer be distributed among designated victims in specified amounts. *See* JA at 83–84. Modification of this order is beyond the power of the United States Attorney, *cf. Porter,* 41 F.3d at 71; it must be performed by the district court in accordance with § 3663.

For the foregoing reasons we vacate the district court's order of restitution and remand for reconsideration consistent with this opinion as to the allocation of the $28,303.50 among the various victims and relevant third parties and for the creation of an appropriate payment schedule.

*E. Role as Organizer under § 3B1.1(c).*

 Mortimer's final contention on appeal concerns the district court's decision to enhance his offense level by two because the court found him to be an organizer of criminal activity pursuant to § 3B1.1(c). A district court's finding concerning a defendant's leadership role in committing an offense should not be disturbed unless found to be clearly erroneous. *United States v. Valdez,* 16 F.3d 1324, 1335 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994). In this case, there was ample evidence to support the district court's conclusion.

According to the application notes to § 3B1.1(c), "[t]o qualify for an adjustment under this Section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." Mortimer was the moving force behind this criminal enterprise. He was in charge of the

---

9. *Atkinson* actually discusses 18 U.S.C. § 3579(e)(1). 18 U.S.C. § 3579 was renumbered 18 U.S.C. § 3663 effective November 1, 1987.

restitution obligation. The government makes no mention of this arrangement in its papers submitted to us. In *Porter,* 41 F.3d at 71, we held that the district court may not delegate its authority to determine a scheduling of installment payments.

explosives and came up with the idea to use them to break open safes. He was in charge of disabling the alarm systems. Evidence collected in his home, including maps, supports the inference that he was largely responsible for selecting likely targets. The district court's finding that Mortimer was an organizer was not clearly erroneous.

## CONCLUSION

We have carefully considered appellant's other challenges to the judgment, including those raised in Mortimer's *pro se* brief, and find them to be without merit.

In sum, we affirm in all respects, except we vacate the order of restitution and remand for further proceedings consistent with this opinion.