**UNITED STATES of America**

v.

**Jerry NORFLEET, Defendant.**

**No. 01 CR 917(CM)(LMS).**

United States District Court, S.D. New York.

Feb. 5, 2002.

Andrew C. McCarthy, Jonathan Leiken, Assist. U.S. Attorneys, for U.S.

Kevin Gilleece, Chestnut Ridge, NY, for defendant.

## DECISION & ORDER

SMITH, United States Magistrate Judge.

The Government has sought reconsideration of a bail order entered by the undersigned in this matter on January 31, 2002. Defendant, through counsel, asks this Court to adhere to its initial ruling. I grant the motion to reconsider, and for the reasons set forth below, I persist in denying the Government's application to detain defendant at this time.

This defendant was arrested on May 15, 2001. The following day he was presented before the Honorable Mark D. Fox, United States Magistrate Judge, and was detained pending a hearing. On May 22, 2001, he appeared before the undersigned for a detention hearing. Rather than proceeding with a hearing, the Assistant United States Attorney recommended a joint bail package to release defendant on a $25,000 personal recognizance bond, cosigned by three financially responsible persons, with a condition that he be subject to home confinement with electronic monitoring and strict Pretrial Services supervision, as well as travel restrictions. To this recommendation I added a condition that defendant continue in the drug treatment program which he had independently begun at Daytop before his arrest in this case, and that he undergo random drug testing as deemed appropriate by the supervising Pretrial Services Officer. I specifically stated that if it had not been for the Government's recommendation that he be released on bail, it is likely that I would have entered an order of detention.[1] I also issued a strict warning to defendant that any violation of the bail conditions, even a minor violation, would be reported

1. Pursuant to the provisions of Title 18, United States Code, Section 3141(3), a statutory presumption for detention applied to this defendant.

to me and would likely result in a revocation of bail. After I set these bail conditions, the Pretrial Services Officer informed the Court that it would probably take a day before the electronic monitoring equipment could be installed. At my inquiry, the Assistant United States Attorney stated that he had no opposition to releasing the defendant upon the signatures of the cosigners, so long as the electronic monitoring was completed within a day.[2]

Subsequent to the bail hearing, the matter was recalled. The defendant's criminal history predominantly consists of a 1986 conviction, after trial, on narcotics trafficking charges, which resulted in a sentence of four years to life. He had been paroled in 1990, had his parole revoked in 1994, and was reparoled the following month. He is serving life parole. Defendant has no other convictions. At the reopened bail hearing the Pretrial Services Officer informed the Court that the parole officer would make no decision with regard to revoking defendant's parole until this case was concluded.

The more pressing issue that was raised at the reopened hearing was that the parties had become aware, as a result of the diligence of the Marshals Service prior to releasing defendant, that defendant's wife had an outstanding order of protection prohibiting defendant from having certain types of contact with her. All parties were heard, and defendant's attorney asserted that defendant's wife, who was present in the courtroom, wished to have defendant return to her home. Counsel stated that the order of protection had been issued following defendant's arrest on a misdemeanor assault charge following a marital dispute, and that when plaintiff sought to

have the charge against defendant dismissed, the judge *sua sponte* had issued the order of protection, which does not prohibit them from living together, but prohibits him from assaultive and harassing behavior toward her. At my inquiry, the Government persisted in its earlier bail recommendation, seeking only to have the Court confirm the attorney's statements by inquiring of the wife. Defendant's wife confirmed under oath what the attorney had said, and stated that it was her wish that defendant return to their home. I affirmed the previously set bail conditions, and repeated my statement that I was releasing defendant on bail only on the recommendation of the Government, and with his wife's consent.

On September 26, 2001, defendant was indicted on four counts of distribution and possession with intent to distribute a controlled substance. Two of the counts were in violation of Title 21, United States Code, Sections 812, 841(a)(1) and (b)(1)(B), which carry a mandatory minimum term of five years' imprisonment, and a maximum term of 40 years; two were in violation of Title 21, United States Code, Sections 812, 841(a)(1) and (b)(1)(C), which carry a maximum term of imprisonment of 20 years. On October 3, 2001, defendant was arraigned on the indictment before the Honorable George A. Yanthis, United States Magistrate Judge, and entered a plea of not guilty. At that time, Judge Yanthis modified defendant's bail to remove the conditions of home confinement and electronic monitoring. It appears that he was in full compliance with his bail conditions at that time.

On October 3 and November 15, 2001, defendant appeared for pretrial confer-

---

**2.** I have reviewed the tape of the bail hearing from May 22, 2001, in order to be certain of the details.

ences before the Honorable Colleen McMahon, United States District Judge, to whom his case had been assigned. On January 2, 2002, he also appeared before Judge McMahon, and a bail hearing was held. At that time, apparently because of complaints made by defendant's wife, who was one of the cosigners of defendant's bond, the conditions of electronic monitoring and home confinement were reinstated. Other than the issue raised by defendant's wife, defendant has been in full compliance with his bail conditions. He has remained fully employed, immediately seeking employment when he lost his job, and has complied with the instructions of the supervising Pretrial Services Officer.

On January 31, 2002, the above-named defendant appeared in Court to offer a plea of guilty to one count of the four count indictment. Pursuant to Judge McMahon's Standing Order, entered November 17, 1998 (M10–468), the matter was referred to the undersigned for purposes of a Rule 11 plea allocution.[3] In accordance with a plea agreement between the parties, defendant offered a guilty plea to Count Two of the indictment, which carries a mandatory minimum term of five years' imprisonment, and a maximum term of 40 years' imprisonment.[4]

Following the defendant's allocution, the Assistant United States Attorney[5] sought to have defendant's bail revoked pursuant to Title 18, United States Code, Section 3143(a), on the grounds that defendant had been "found guilty of an offense" for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act at Title 21, United States Code, Sections 801 *et seq.* In this case, the statutory mandatory minimum prison term is five years, and the maximum term, in the absence of filing a prior felony information, is 40 years. Defendant's counsel opposed the Government's application, asserting that the defendant had been successful while on bail, was complying with home confinement and electronic monitoring requirements, was maintaining legal employment, and was successfully attending drug treatment counseling sessions. I denied the Government's application, on the ground that a plea allocution, resulting in a Report and Recommendation to the District Judge, does not qualify as a finding of guilt. Rather, pursuant to Title 28, United States Code, Section 636(b)(1), the Report and Recommendation contains only "proposed findings and recommendations," and a District Judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." Although it is not common, District Judges can, and occasionally do, reject a Magistrate Judge's recommendation to accept a guilty plea. The Government seeks to have me reconsider this decision, arguing that Section 3143 should apply when a

---

**3.** Judge McMahon's Standing Order provides that "in the interests of Justice, any plea allocution as to issues assigned to the Hon. Colleen McMahon from the Criminal Calendar, may heretofor [sic] be consented to before a United States Magistrate Judge. This constitutes the Standing Order of the Court as to criminal plea allocutions." This Standing Order is slightly different from that referred to and quoted in the Government's letter brief of February 1, 2002. I believe that the analysis contained herein would apply despite the minor differences in the language of the Orders.

**4.** Although the plea agreement does not explicitly waive the Government's right to file a prior felony information under 21 U.S.C. § 851, thereby raising the mandatory minimum to 10 years and the maximum to life, the agreed-upon sentence presumes such a waiver by the Government.

**5.** This was a different Assistant United States Attorney than had handled the matter at the bail hearing.

defendant completes a plea allocution before a Magistrate Judge, and that the application of the statute does not require a District Judge to "finally accept" such a plea. February 1, 2002, Letter of Andrew C. McCarthy, at p. 3.

█ I have found no case which directly addresses the issue that is now before me. In *United States v. Williams,* 23 F.3d 629 (2d Cir.1994), the Circuit held that a Magistrate Judge has the authority to administer a Rule 11 allocution with the defendant's consent. The *Williams* Court emphasized the process for review and approval of such an allocution:

> Because the district court remains in control of the proceeding, *and the matter is reported to that court for its approval,* there should be no concern that the use of a magistrate judge to allocute a defendant accused of a felony will tend to devitalize Article III courts. A district judge may readily read the transcript of the allocution for infirmities, if any, and may readminister the allocution if it is thought necessary.

23 F.3d at 634 (emphasis supplied) (citation omitted); *see also United States v. Taveras,* 133 F.Supp.2d 298, 306 (S.D.N.Y. 2001). Based on the relevant statutory language, and the analysis in *Williams,* I conclude that a felony plea allocution taken before a United States Magistrate Judge results only in a recommendation that the assigned District Judge should accept the plea as transcribed, and should then find the defendant guilty of the offense or offenses to which a guilty plea has been offered. This is not a finding of guilt as required in order for the provisions of Title 18, United States Code, Section 3143 to apply.[6]

*United States v. Leyland,* 277 F.3d 628 (2d Cir.2002), the case cited by the Government in its reply letter of February 5, 2002, does not support their argument. The *Leyland* decision does not involve a plea allocution by a Magistrate Judge, and does not involve application of Section 3143. Although there is language in the decision which refers to double jeopardy claims being waived by the signing of a plea agreement, not just by entry of a guilty plea, that is not the holding of the case. Rather, the Court affirmed the District Court's finding that the defendant had waived his arguments when the District Court "accepted his guilty plea[.]" Slip op. at 495. The reference in *Leyland* to signing of a plea agreement cited to *United States v. Mortimer,* 52 F.3d 429, 435 (2d Cir.1995), which addressed only sentencing issues, and is inapposite here. It is also worth noting that both *Leyland* and *Mortimer* arose from districts other than the Southern District of New York, and we have no way of knowing what is included in the plea agreements that are referenced. In fact, *Leyland* reports that "[b]oth in the plea agreement and during plea allocution, Leyland admitted to facts sufficient to support [the conviction.]" Slip op. at 496. By contrast, the plea agreement in this case does not contain admissions by the defendant. Even if it did, that would not be enough to automatically revoke defendant's bail under Section 3143. It is not out of the ordinary for a cooperating defendant, with an agreement to enter a guilty plea, to testify under oath before a Grand Jury, with essentially the

---

6. In *United States v. McAllister,* 974 F.2d 291, 292 (2d Cir.1992), the Circuit noted that "the plain language" of the bail revocation statute was to be applied. That plain language requires a person to be "found guilty of an offense" (Title 18, United States Code Section 3143) in order for mandatory revocation to occur. No such guilty finding has yet occurred, and no such guilty finding will occur until the District Judge issues the appropriate Order.

same waivers and details that would be offered during a Rule 11 allocution, in order to preserve the admission without creating a public record. Such a proceeding would produce precisely the same "near guarantee of conviction" that is identified in *Leyland*, (slip op. at 497), yet would not be a finding of guilt sufficient to support revocation of bail.

The former United States Attorney for the Southern District of New York, in a letter to the Honorable Michael B. Mukasey, Chief Judge, recognized "the uncertainty of the finality of Magistrate Judge pleas[.]" Letter from Mary Jo White to Chief Judge Mukasey, dated April 24, 2001, at p. 2. The proposal made by United States Attorney White in that letter was that the Government would thereafter order the transcript of the plea allocution immediately after its conclusion, and forward it to the District Judge for review. "If promptly accepted, the plea is final and can no longer be unilaterally revoked by the defendant[.]" *Id.* That option remains open to the Government in this case [7], and such an action would, upon the appropriate Order of the District Judge, call for the application of the bail revocation provision in Title 18, United States Code, Section 3143.

Furthermore, the Government need not consent to entry of the plea before a Magistrate Judge, and may request that it be scheduled before the assigned District Judge instead. While this may not be the most efficient use of judicial resources (*see Williams*, 23 F.3d at 633 ("when a defen-

dant consents to the use of a magistrate [to conduct a plea allocution], it aids an already overburdened district court in moving along its caseload of work.")), under the existing statutory structure, this is the only way to insure that a defendant is "found guilty" for purposes of applying Title 18, United States Code, Section 3143. In addition, the Government may negotiate with a defendant to consent to revocation of bail upon entry of a guilty plea, and include such an agreement in the written plea agreement.

■ The Court is not insensitive to the concerns raised by the Government. Indeed, in many cases, a motion for revocation of bail at the time of the plea allocution would probably be (and often has been) granted. However, in this case I was satisfied that the entry of the plea allocution was not a sufficient changed circumstance to warrant revocation. With one exception that was related to a domestic dispute, the defendant had been fully compliant with very onerous bail conditions. Those original bail conditions had been recommended by the Government, and the Government persisted in this recommendation even after becoming aware of the existing domestic problems that had resulted in an order of protection against defendant. While defendant was on bail, he was employed, thereby supporting his wife, their two children, and a step child. He was successfully undergoing drug treatment, which he had commenced prior to his arrest, and had consistently tested negative for controlled substances when

---

7. The Magistrate Judges in White Plains have the practice of ordering all plea allocution transcripts, for delivery within either 30 or 45 days. (We are revising this to consistently require delivery within 30 days, which is the same requirement set forth in the Guide to Judiciary Policies and Procedures, Volume VI, Part 17.8 at 17.8.2.c.) It is not our practice to direct any party to obtain and pay for

these transcripts, as they encompass our Report and Recommendation to the District Judge, and it is therefore for the convenience of the Court that the transcripts are being produced. However, any party may, at its own expense, order a transcript on a more expedited basis than that required by the Court. *See id.* at 17.8.2.e.

tested by Pretrial Services. Moreover, he had voluntarily come to Court in order to enter his plea of guilty to a crime which carries a five year mandatory minimum prison term (and by his plea he faces parole revocation on his prior conviction), knowing that his bail may have been revoked following his plea. I concluded, based on all of this information, that the defendant had established, by clear and convincing evidence, that he was no longer a risk of flight, and that any issue of danger to the community was successfully addressed by the existing bail conditions. I continue to believe that was the correct decision, under all the circumstances of this case.

The Government's submission recognizes that Magistrate Judges have a certain "expertise" in the area of bail (February 1, 2002, Letter of Andrew C. McCarthy, at p. 3), and thus we are particularly capable of making appropriate bail determinations. The argument is that we are therefore capable of applying Section 3143. However, application of the mandatory provisions of Section 3143 requires no particular expertise. The need to weigh the factors ordinarily considered in an initial bail determination does not exist if Section 3143 applies to this situation. Thus, the Government's argument about a Magistrate Judge's "expertise" more properly supports a Court's consideration of all the factors, and independent determination of bail, as was done in this case. Although Jerry Norfleet has "done all it is in his power to do to enter a plea of guilty to narcotics trafficking charges" (*Id.* at p. 1), he has not yet been found guilty. The mandatory revocation provisions of Section 3143 do not apply until such a guilty finding has taken place. When and if Judge McMahon issues an Order accepting the Report and Recommendation of the undersigned, and finding the defendant guilty, then the Govern-

ment may make the appropriate application to Judge McMahon. In the alternative, the Government is free to appeal from this Decision, or to make a new bail application to Judge McMahon.

For these reasons, the motion for reconsideration is granted, and upon reconsideration I deny the application for revocation of defendant's bail under Title 18, United States Code, Section 3143.

This constitutes the Decision and Order of the Court.

**SO ORDERED.**