UNITED STATES of America, Appellee,

v.

Daniel MORTIMER, Defendant–
Appellant.

No. 1785, Docket 96–1067.

United States Court of Appeals,
Second Circuit.

Argued June 20, 1996.

Decided Aug. 29, 1996.

Edward R. Broton, Assistant United States Attorney for the Northern District of New York, Syracuse, New York (Thomas J. Maroney, United States Attorney, Syracuse, New York, of counsel), for Appellee.

Joseph E. Fahey, Syracuse, New York, for Defendant–Appellant.

Before KEARSE, MAHONEY, and McLAUGHLIN, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Daniel Mortimer appeals from a judgment (110–14) entered December 28, 1995 in the United States District Court for the Northern District of New York, Howard G. Munson, *Judge,* that resentenced Mortimer following vacatur and remand of his initial sentence of restitution in *United States v. Mortimer,* 52 F.3d 429 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995). Mortimer was initially sentenced after he had pled guilty to transporting an unregistered firearm in interstate commerce in violation of 26 U.S.C. § 5861(j), and using and carrying an explosive during the commission of a felony in violation of 18 U.S.C. § 844(h).

On resentencing, the district court directed, *inter alia,* that Mortimer pay restitution while in prison according to a schedule to be determined pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program (the "IFRP"). Mortimer challenges only this aspect of his current sentence on this appeal.

We vacate the sentence of restitution and remand for resentencing.

## Background

On April 21, 1993, a grand jury issued a superseding indictment that charged Mortimer and two codefendants with nine counts involving the use of the explosive nitroglycerin in connection with robberies of banks and department stores. Mortimer admits to having participated in five robberies in New York, Pennsylvania, and Vermont between December 3, 1990 and August 5, 1991. Nitroglycerin was either used or intended to be used in all or most of these robberies.

On December 1, 1993, Mortimer entered into a plea agreement with the government pursuant to which he pled guilty to transporting an unregistered firearm in interstate commerce in violation of 26 U.S.C. § 5861(j), *see also id.* § 5871 (prescribing criminal penalty), and using and carrying an explosive

during the commission of a felony in violation of 18 U.S.C. § 844(h).[1] On March 8, 1994, the district court sentenced Mortimer to consecutive terms of fifty-one months and sixty months imprisonment, to be followed by three years of supervised release. The district court also directed that Mortimer pay a special assessment in the amount of $100.00, and ordered him to make restitution in the amount of $28,333.50, to be paid immediately.

On the initial appeal, we affirmed the sentence except as to restitution, vacating the order of restitution partly on the basis that the district court had lacked a sufficient evidentiary basis to conclude that Mortimer was able to pay the restitution immediately. *See Mortimer*, 52 F.3d at 436, 438. We remanded the case to the district court with instructions to "devise a reasonable payment schedule." *Id.* at 436. We noted that Mortimer's appeal brief stated that he had entered into an agreement with the Bureau of Prisons under which he paid $25.00 a month toward his restitution obligation, and observed that in *United States v. Porter*, 41 F.3d 68, 71 (2d Cir.1994), we had "held that [a] district court may not delegate its authority to determine a scheduling of installment payments." *Mortimer*, 52 F.3d at 436 n. 8.

On December 15, 1995, the district court resentenced Mortimer. It left unchanged the terms of incarceration and supervised release, and reimposed the $100.00 special assessment and $28,333.50 in restitution. With respect to the payment schedule for the restitution, the district court ordered as follows:

> While in custody, the defendant shall participate in the Bureau of Prisons' Inmate Financial Responsibility Program and make restitution in accordance with the policies of that program. Upon his release from imprisonment, the defendant shall make restitution payments in accordance with the terms of supervised release (in installments of $100 per month.)

Mortimer again appeals his sentence. He argues that the district court's direction for payment of restitution during his term of imprisonment improperly delegated to the Bureau of Prisons the responsibility for devising a payment schedule.

## Discussion

In *Porter*, we held that a district court may not delegate to a probation officer the responsibility to devise a restitution payment schedule or to determine the amount to be paid. 41 F.3d at 71. This case presents the issue whether our holding in *Porter* extends to delegations to the Bureau of Prisons pursuant to the IFRP.

The IFRP was instituted on April 1, 1987, *see Prows v. Department of Justice*, 938 F.2d 274, 275 (D.C.Cir.1991) (per curiam), in order to offer inmates the opportunity "to meet [their] legitimate financial obligations." 28 C.F.R. § 545.10. When an inmate participates in the program, his payment schedule is determined on an ad hoc basis with the assistance of the prison staff. *See id.* ("[Prison] staff will assist the inmate in developing a financial plan . . . ."); *id.* § 545.11 (detailing applicable procedures).

The government attempts to distinguish *Porter* on the ground that in that case the district court delegated the power to set restitution schedules after the defendant was out of jail on supervised release. In the present case, Mortimer challenges only the direction to participate in the IFRP while he is incarcerated. The government argues in its brief on appeal that this distinction is significant because after a defendant is released from incarceration, "supervised release could be revoked and the defendant returned to prison because of his failure to comply with sentencing terms devised by a probation officer rather than [by] the court."

In *Porter*, we reasoned that to allow a probation officer to determine the amount or payment schedule of restitution would be to "delegate the judicial functions inherent in the grant of restitution to the probation department." 41 F.3d at 71. We noted only the impropriety of the delegation, not the nature or severity of the consequences that

---

1. The latter of these two counts does not appear in the superseding indictment, but was included in an information that was filed at the time of Mortimer's guilty plea. *See Mortimer*, 52 F.3d at 432 n. 2.

the defendant would face for noncompliance. Because payment schedules under the IFRP are not fixed according to a predetermined formula, but rather vary at the discretion of the prison staff, the delegation in this case is just as real as in *Porter*.[2] The rationale of that case is equally applicable here. *Cf. United States v. Kassar*, 47 F.3d 562, 568 (2d Cir.1995) ("The statutory language of [18 U.S.C.] §§ 3572(d) and 3663(f)(1) identically impose upon the 'court' the responsibility for determining installment payments; we accordingly hold that the *Porter* rule applies to fines as well as orders of restitution.").

In reaching this conclusion, we are in accord with the Fourth Circuit's recent ruling in *United States v. Miller*, 77 F.3d 71 (4th Cir.1996). In *Miller*, "the district court [had] ordered [the defendant] to pay a $3,000 fine and fifty-dollars restitution ... under the [IFRP]." *Id.* at 74. Miller challenged his sentence, arguing, *inter alia*, that the district court had erred "in delegating to the Bureau of Prisons ... the determination of the timing and amount of his installment payments for the fine and order of restitution." *Id.* The *Miller* panel concurred, vacated the defendant's sentence in this respect, and remanded for resentencing. *See id.* at 77–78. We agree with the Fourth Circuit that "the district court's delegation of its authority to establish the installment amount and timing of [the defendant's] ... restitution payments to the Federal Bureau of Prisons ... was error that requires us to vacate his sentence and remand for resentencing." *Id.* at 77.

## Conclusion

We vacate Mortimer's sentence with respect to restitution and remand for resentencing consistent with this opinion.

---

2. We note that a district court could properly draw upon the IFRP guidelines stated in the Code of Federal Regulations in fashioning an order of restitution that specifies the amounts to be paid, so long as discretionary authority to depart from the court's order is not vested in prison officials.