**UNITED STATES of America,
Appellee,**

v.

**Robert GRANT, Defendant–Appellant.**

Docket No. 00–1251.

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 2000.

Decided Dec. 13, 2000.

John Humann, Federal Public Defender's Office, Buffalo, NY, for Defendant–Appellant.

Martin J. Littlefield, Assistant United States Attorney, Buffalo, NY, (Denise E. O'Donnell, United States Attorney for the Western District of New York, on the brief), for Appellee.

Before: WALKER, Chief Judge,
MINER and POOLER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Robert Grant appeals from an amended judgment of conviction and sentence entered in the United States District Court for the Western District of New York (Skretny, *J.*) to the extent that the amended judgment incorporates an order modifying a direction for the payment of restitution. The modification was based on the district court's determination that there had been a material change in Grant's economic circumstances since the time restitution was first ordered.

Grant challenges the district court's determination, contending that the existence

of his inmate account, said to constitute the changed circumstances in the case, was known to the government at the time of his original sentence. The district court decided that, because its attention was drawn to the account only after sentence was first imposed, its belated awareness of the monies in the account constituted a material change in Grant's economic circumstances and therefore justified modification of the restitution requirement originally imposed. We affirm, but for reasons different from those given by the district court.

## BACKGROUND

Grant was charged in a single count indictment with mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. According to the indictment, Grant, while an inmate in the custody of the New York State Department of Correctional Services, solicited and received money in varying amounts from a number of individuals with whom he corresponded pursuant to a fraudulent scheme. The scheme involved the placement of advertisements in a national gay magazine describing Grant's desire to enter into a "meaningful relationship." Grant corresponded with those who answered the advertisements, advising them that he was a homosexual in search of an enduring and intimate association. In many of the communications, Grant represented that he was about to be released and needed monies for a non-existent "[p]re-[r]elease [f]und." He also falsely represented to many individuals with whom he took up correspondence in this manner that he needed plane, train, or bus fare so he could come to live with them. In his quest for funds, Grant made false representations that he needed money to secure an early release.

Grant also falsely represented that he was harassed by prison officials because he was gay and therefore needed funds to finance the many legal actions that he brought because of the harassment. Other false representations made by Grant included the following: that prison guards had stolen his money; that his release was held up due to lack of funds; that he needed money to pay court costs arising from his conviction; and that funds were needed for him to collect a $30,000 inheritance from his mother.

Apparently, Grant's pleas for funds fell on a large number of sympathetic ears. Between October 21, 1994 and May 12, 1998, approximately $34,000 was deposited into Grant's inmate account, most of it contributed by the individuals with whom Grant communicated. In large part, these funds were disbursed from the inmate account back to certain persons with whom Grant was corresponding and, through them, to third persons whose identities Grant wished to conceal from prison authorities. So successful was the re-disbursement of these funds that only $400 remained in the inmate account at the time of the restitution order that is the subject of this appeal.

Grant first raised the question of his entitlement to the $400 remaining in his account after his indictment and while still in the custody of the New York Department of Correctional Services at the Wende Correctional Facility at Alden, New York. The specific occasion was an oral argument held before Magistrate Judge Heckman on January 20, 1999, regarding suppression motions relating to his federal indictment. At that time, in the presence of his attorney and the Assistant United States Attorney, Grant addressed the following remarks to the Magistrate Judge:

> I have [a] certain amount of funds on my account, and they will not allow me to spend it, and they have wrote a letter that because it was obtained—at what they say is illegally, that I can't have it until pending the outcome of this Court.

The Magistrate Judge responded that the matter would have to be taken up with the prison authorities because she had no jurisdiction over it. Grant then said: "No,

the prison, I have got the letter right from them, they are saying until this Court rules, they are not giving me my money because of the U.S. Attorney."

The Magistrate Judge answered Grant's statement regarding the need for a court ruling by stating: "Well, then I can't do anything more with that, you have to wait then until the case is over." Grant replied that he had "waited a year and a half" and that he "need[ed][his] money for other legal matters." The Magistrate Judge reiterated her determination that she lacked jurisdiction over the account and terminated further discussion of the matter.

On May 13, 1999, Grant entered a plea of guilty to the one-count mail fraud indictment pursuant to a plea agreement in which he essentially admitted all the accusations made in the indictment, including the accumulation of approximately $34,000 in his inmate account as the result of his illicit activities. In a pre-trial services report compiled prior to Grant's arraignment on November 4, 1998, an Assistant United States Probation Officer had written the following: "The defendant reported his only asset is $400 in a prison account which is currently frozen." This was the same account balance that Grant referred to in the proceeding before the Magistrate Judge described above.

The pre-sentence investigation report prepared in the probation office prior to Grant's sentencing noted that Grant was "indigent as he is virtually penniless." Whether Grant discussed the inmate account with Probation Officer Brian Burns during the pre-sentence interview by Burns is a question that has not been resolved in any court finding. It does appear that counsel for Grant submitted a statement acknowledging that he had reviewed the pre-sentence report with his client and that no information included in the report was disputed. On July 28, 1999, Grant filed a motion putting in issue the amount of restitution to be ordered at sentencing.

Prior to the imposition of the original sentence, written arguments were submitted to the district court regarding the amount of restitution, with Grant contending that a large portion of the $34,000 deposited was not the result of criminal activity but came from people who knew what kind of person he was and knew what they were doing. The government responded that while the money may have been "voluntarily" given, it was nevertheless given on the basis of false representations made by Grant. Ultimately, the court found that the restitution ordered would be lower than the loss amount because of the difficulties in establishing the identities and locations of the victims and the separate amounts to be recouped. A restitution figure of $5,690 was agreed upon, representing the losses sustained by four identified victims.

The sentence imposed upon Grant included confinement for a term of thirty-seven months to be served consecutive to his New York State sentence; supervised release for three years upon his discharge from prison; a special assessment in the sum of $100; and payment of restitution in the amount of $5,690 as follows: $25 per quarter while in confinement unless employed in certain prison industry classifications, in which case 50% of monthly pay would be required, and $200 per month while on supervised released.

Two months after sentencing, the government filed a motion to modify restitution, alleging that the court was unaware of the balance in the inmate account at the time of sentencing; that the money in the account was derived from Grant's fraudulent activities; and that the court sentenced Grant without full knowledge of his assets; and that this constituted a material change in Grant's economic circumstances warranting modification of the restitution portion of the sentence. Grant responded with a motion to deny modification, asserting that there had been no material change in his economic circumstances and that he did not willfully avoid the payment of resti-

tution in the face of changed circumstances in any event.

The district court heard oral argument and ultimately issued a written order granting the government's motion to modify and denying Grant's motion to deny modification. The court stated that "[a]t the time of [Grant's] sentencing, [it] was unaware of monies located in [Grant's] account with the New York State Department of Corrections and, therefore, sentenced [Grant] without full knowledge of [his] assets." Finding this to be a material change in Grant's economic circumstances sufficient to invoke the provisions of 18 U.S.C. § 3664(k), the court ordered the seizure of the account and directed that it first be applied to the satisfaction of the special assessment penalty and "that the remainder be immediately used for restitution." This appeal followed.

## DISCUSSION

### I. Standard of Review

■■■ We review a district court's application of the Sentencing Guidelines as well as other questions of law de novo. See United States v. Napoli, 179 F.3d 1, 6 (2d Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000). A district court's factual findings made while applying the Sentencing Guidelines are reviewed for clear error. See id. Additionally, we review an order of restitution for abuse of discretion. See United States v. Stevens, 211 F.3d 1, 3 (2d Cir. 2000).

■■■ The appropriate standard of review is in dispute in this case. Grant argues that the district court's application of section 3664(k) involved an interpretation of law and thus should be subject to de novo review. The government argues that a clear error standard should apply because that is the standard that we employ when reviewing a district court's findings of fact in the sentencing context. Grant has the better argument on this issue.

Here, the district court decision is more akin to an application of a statutory provision than to a factual finding. Indeed, the district court did not so much find as a factual matter that Grant's economic circumstances had changed as it did hold as a legal matter that a court's evolving understanding of a defendant's static financial circumstances can amount to a "material change" sufficient to invoke the court's section 3664(k) authority.

■■■ Similarly, the abuse of discretion standard normally applied to orders of restitution appears inappropriate in this case. District courts issue orders of restitution pursuant to 18 U.S.C. § 3663 after considering the amount of loss caused by the offense, the defendant's financial resources, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate. See 18 U.S.C. § 3663(a)(1)(B)(i). Perhaps because of the balancing of factors involved in issuing orders of restitution, we apply the "extremely deferential" abuse of discretion standard of review to such orders. United States v. Giwah, 84 F.3d 109, 114 (2d Cir.1996). The district court's decision at issue in this case involved no such weighing of statutory factors. Rather, it involved the legal question of deciding what constitutes a "material change in the defendant's economic circumstances" under section 3664(k). Accordingly, we review the district court's decision de novo.

### II. The Merits

Modification of an order of restitution is governed by the following statutory provision:

A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or

from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require. 18 U.S.C. § 3664(k).

█ Pursuant to the foregoing, a material change in the economic circumstances of a defendant subject to a restitution order may come to the court's attention from one of three sources: the defendant himself, the United States, or the victim. Before adjusting the schedule for payment, the court must receive a certification from the Attorney General that those owed restitution have been informed of the defendant's changed circumstances. Modification of the order may come on motion of any party, a victim, or the court *sua sponte*.

█ In Grant's case, the purported change in economic circumstances was brought to the court's attention by the government, which performed its duty to notify the victims before the modification order was entered. The government's motion for modification was predicated upon the contention that the district court was unaware of the changed circumstances, and the court adopted that contention as the predicate for its order. However, it cannot be that a court's later understanding that it had sentenced a defendant "without full knowledge of [his] assets" alone constitutes a material change in economic circumstances. A change of the sort contemplated by the statute is identified by an objective comparison of a defendant's financial condition before and after a sentence is imposed. The court is a passive player in the process and cannot know of a defendant's financial circumstances unless those circumstances are brought to its attention. The acquisition of information by the court simply cannot constitute a change in the defendant's economic situation.

While the government does not dispute that it was aware of Grant's frozen inmate account, it does make the allegation that he failed to disclose the account in his pre-sentence interview. But Grant maintains that he disclosed the account during the pre-sentence interview, and the district court made no factual finding that he failed to acknowledge the existence of this asset in connection with the financial disclosure aspect of his pre-sentence interview. The pre-sentence report, accepted by counsel for Grant, recites that "the defendant is indigent as he is virtually penniless." Because the district court made no finding as to whether Grant concealed or failed to report assets, we do not reach the issue of whether the subsequent discovery of assets concealed by a defendant would constitute a material change in circumstances. Surely, however, there would be a remedy that would permit the gathering of assets that were unknown to the authorities as the result of a defendant's dishonesty.

█ In any event, despite the district court's error in classifying its later acquisition of knowledge of the inmate account as a material change in Grant's economic circumstances, we think that there is a sufficient basis in the record to affirm the judgment. Our affirmance need not rely on the same rationale as that put forward by the district court. *See, e.g., Prayze FM v. Federal Communications Comm'n*, 214 F.3d 245, 249 (2d Cir.2000). In this case it seems clear to us that there *was* a material change in Grant's economic circumstances. At the time of the original judgment of conviction and sentence, the inmate account was "frozen" by the state prison authorities pending the outcome of the federal prosecution; it later became "unfrozen" when the prison authorities made the account available for withdrawal. That did not occur until after the original judgment of conviction and sentence was entered. As noted by counsel for Grant in

an affidavit in opposition to the government's motion:

> The government admits that the funds were not accessible to the defendant. Contrary to the government's claim, since the funds were frozen, they were not an asset to which the defendant had access. Mr. Grant has been repeatedly told by the NYS[ ] Department of Corrections that they would not release the funds to him until such time as the federal case was completed.

Accordingly, the funds in question were not available to Grant until the completion of the federal prosecution, which originally concluded with the entry of judgment on August 16, 1999. It was only after that event that funds became available as a result of the decision of the New York prison authorities to make those funds available at the conclusion of the federal proceedings. The motion for modification of the restitution order by the United States Attorney, who played no part in the freezing of the account, followed shortly thereafter. The release of the account and the consequent availability of the funds meet the statutory test for a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k).

## CONCLUSION

In accordance with the foregoing, the amended judgment of conviction and sentence incorporated in the order modifying the direction for the payment of restitution is affirmed.