06-4196-cr
United States v. Kyles

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Submitted:  May 20, 2009                              Decided: April 2, 2010)

Docket No. 06-4196-cr

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

BASIL J. KYLES,

*Defendant-Appellant.*

Before:

MINER, KATZMANN, and RAGGI, *Circuit Judges.*

On appeal from a judgment of the United States District Court for the District of

Connecticut (Covello, *J.*), defendant challenges the court's authority to amend his restitution

schedule while he is still incarcerated.  Although the Victim and Witness Protection Act of

1982, 18 U.S.C. § 3663 et seq., does not expressly confer such authority, we conclude that

it inheres in the authority that statute confers on district courts to permit an award of

restitution to be paid in periodic installments, see id. § 3663(f)(1), rather than immediately,

as otherwise provided by law, see id. § 3663(f)(3).  Nevertheless, insofar as the final

challenged order provides for increases in defendant's restitution schedule in accordance with the Inmate Financial Responsibility Program, we vacate that order as an impermissible delegation of judicial power to the Bureau of Prisons.

AFFIRMED in part, VACATED in part, and REMANDED.

————————————

MARSHALL A. MINTZ, Mintz & Oppenheim LLP, New York, New York, *for Defendant-Appellant*.

CHRISTINE SCIARRINO, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *on behalf of* Nora R. Dannehy, United States Attorney for the District of Connecticut, Hartford, Connecticut, *for Appellee*.

————————————

REENA RAGGI, *Circuit Judge*:

Defendant Basil Kyles was convicted after a jury trial in the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). On September 9, 1993, the court sentenced Kyles to 262 months' imprisonment, five years' supervised release, and a $50 special assessment. As a special condition of his supervised release, Kyles was directed to pay $4,133 in restitution on a schedule to be determined by the United States Probation Office.

In fact, the Probation Office never set any restitution schedule for Kyles. Instead, over the next thirteen years, the district court itself entered various orders specifying the schedule on which Kyles was to pay the specified restitution amount while incarcerated, requiring first

2

that he pay $2 per month, then that he pay $25 per month, and finally that he pay such amount as was determined under the guidelines of the Inmate Financial Responsibility Program ("IFRP"). Kyles did not timely appeal the first amended order, precluding him from doing so now. See Baker v. Dorfman, 239 F.3d 415, 426 n.6 (2d Cir. 2000). He nevertheless challenges the last two amendments as unauthorized modifications of his sentence. Although Kyles acknowledges that the Victim and Witness Protection Act of 1982 ("VWPA") permits a sentencing court to order a defendant to make restitution in installments over a specified time, see 18 U.S.C. § 3663(f)(1) (1993),[1] he maintains that the statute does not authorize modifications to a restitution schedule while a defendant is still incarcerated. For the reasons discussed in this opinion, we disagree. Whatever limits may apply to a court's authority to alter the amount of restitution awarded in a judgment of conviction, these limits do not extend to the court's authority to modify the schedule for paying such amount. The latter authority derives from the statutory conferral of discretion on district courts to excuse a defendant from the presumption in favor of immediate payment of a restitution award. See id. § 3663(f)(1), (3). Implicit in such effectively equitable power is the authority to modify an initial payment schedule as warranted by a defendant's financial circumstances, mindful of the overall statutory goal of compensating crime victims.

    While we thus reject Kyles's authority challenge on the merits, we are compelled by

---

[1] The Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1227, has since supplemented and amended the VWPA. For purposes of this opinion, all citations to the VWPA are to the version in effect at the time of Kyles's 1993 sentencing.

3

circuit precedent to conclude that the last challenged order, directing that Kyles's payment schedule be increased as warranted by IFRP guidelines, constitutes an impermissible delegation of judicial power to the Bureau of Prisons. See United States v. Mortimer, 94 F.3d 89, 90-91 (2d Cir. 1996). Accordingly, we vacate that order and remand for the district court itself to set an appropriate restitution schedule.

## I.  Background

### A.  The Order of Restitution in the Original Judgment of Conviction

In a judgment of conviction entered on September 15, 1993, Kyles was sentenced on one count of armed bank robbery to 262 months' incarceration, five years' supervised release, and a $50 special assessment. In a section entitled "Special Conditions of Supervised Release," the judgment stated that "Defendant shall make restitution to the Shawmut Bank in the amount of $4,133 on a schedule to be determined by the United States Probation Office." United States v. Kyles, No. 92 Cr. 91, Judgment (Sept. 15, 1993). The judgment was affirmed by this court in United States v. Kyles, 40 F.3d 519, 527 (2d Cir. 1994).[2]

### B.  Amendments to the Restitution Schedule

#### 1.  The October 19, 1998 Order Amending Judgment

On October 19, 1998, the district court ordered that Kyles's original judgment be

_____

[2] On appeal, Kyles appears not to have challenged the delegation of authority to the Probation Office to fix his restitution schedule. We subsequently held such a delegation invalid in United States v. Porter. See 41 F.3d 68, 70-71 (2d Cir. 1994).

amended to require him to "pay restitution of $2 per month, while incarcerated." United

States v. Kyles, No. 92 Cr. 91, Order Amending Judgment (Oct. 19, 1998).[3]  The court

specifically reserved the authority to alter this amount as circumstances warranted. See id.

("The court may adjust the amount of the monthly repayment according to the defendant's

ability to pay."). Kyles did not appeal this order. Thus, any challenges he might have to the

October 19, 1998 amendment to his restitution schedule are waived. See Baker v. Dorfman,

239 F.3d at 426 n.6.

### 2. The June 5 and September 1, 2006 Orders Amending Judgment

Nearly eight years after its initial amendment, purportedly in response to "information

. . . from the Bureau of Prisons indicati[ng] that [Kyles] ha[d] experienced a positive material

change in his ability to pay," United States v. Kyles, No. 92 Cr. 91, Order on Increase in

Restitution Payments, at 1 (Sept. 1, 2006), the district court again amended the judgment in

Kyles's case, this time "to reflect an increase in the defendant's restitution payment

obligation from $2 each month to $25 each month, while incarcerated," id., Order Amending

Judgment (June 5, 2006).[4]  Once more, the district court reserved the right to make future

---

[3] The record on appeal does not indicate the circumstances prompting or rationale for this order.

[4] A government submission to the district court on August 25, 2006, raises some question as to whether the Bureau's communication – not part of the record on this appeal – in fact addressed Kyles's ability to pay restitution. The government maintained that the Bureau had referenced Kyles's recent transfer to a correctional facility in South Carolina and had advised that the Bureau could not monitor the ordered $2 monthly payment through the IFRP, as the IFRP required minimum payments of $25 per quarter. We need not pursue the matter further in light of our decision to vacate and remand.

adjustments to the restitution schedule based on Kyles's ability to pay.  See id.

In an ex parte letter dated June 15, 2006, Kyles sought reconsideration of this amendment, prompting the district court to stay its June order pending further submissions from the parties.  See id., Order Staying Enforcement of Amended Judgment (July 14, 2006). In his filings, Kyles argued that the district court lacked authority to issue either the October 1998 order or the June 2006 order, as neither had been entered within seven days of sentencing as required by the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 35(c) (1993) (permitting court to correct clear sentencing error within seven days of judgment).  Even if the court possessed the requisite authority, Kyles insisted he lacked the means to pay $25 per month.

The government disputed the latter assertion and submitted that Rule 35(c) was inapplicable as the challenged amendment did not constitute a "correction" of the judgment. Further, in response to a specific inquiry from the court as to the need for an Attorney General certification under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3664(k) (permitting court to adjust restitution schedule upon notification of a "material change in the defendant's economic circumstances," but requiring Attorney General to "certify to the court" that any victim owed restitution has "been notified of the change in circumstances"), the government asserted that the statute did not apply in Kyles's case given its enactment after his sentencing and, in any event, the lack of a "material" change in Kyles's financial circumstances exempted him from the certification requirement.

6

On September 1, 2006, the district court concluded that Kyles did have the ability to pay increased monthly restitution and that no Attorney General certification was necessary. United States v. Kyles, No. 92 Cr. 91, Order on Increase in Restitution Payments, at 2-3 (Sept. 1, 2006).[5] The court did not lift the stay on its June 5, 2006 order directing Kyles to pay $25 per month in restitution. Rather, it vacated that order and directed that Kyles's "restitution payments shall be increased in accordance with the guidelines of the Inmate Financial Responsibility Program." Id. at 3 (citing 28 C.F.R. §§ 545.11, 545.12).

On September 11, 2006, Kyles filed timely notice of the instant appeal.[6]

## II. Discussion

### A. Standard of Review

Ordinarily, we review a challenged order of restitution for abuse of discretion. See United States v. Ojeikere, 545 F.3d 220, 222 (2d Cir. 2008). This appeal, however, does not present us with the sort of challenge to a district court's balancing of the statutory factors relevant to restitution that demands an "extremely deferential" standard of review. United States v. Grant, 235 F.3d 95, 99 (2d Cir. 2000) (internal quotation marks omitted). Rather, it raises legal questions as to the district court's authority (1) to modify a restitution schedule

_____

[5] Because these rulings are not challenged on this appeal, we do not discuss them further.

[6] Although we initially dismissed Kyles's appeal for failure either to pay the docketing fee or to move for leave to proceed in forma pauperis, we granted reinstatement when Kyles remedied the latter omission. This appeal has been consolidated with Kyles's appeal from the district court's June 5, 2006 order.

7

set under 18 U.S.C. § 3663(f)(1) during a defendant's term of incarceration, and (2) to direct that restitution payments be increased in accordance with IFRP guidelines. We review such questions of law de novo. See United States v. Grant, 235 F.3d at 99; see generally United States v. Selioutsky, 409 F.3d 114, 119 (2d Cir. 2005).

B.    The District Court Did Not Exceed Its Authority in Modifying Kyles's Restitution Schedule While He Was Incarcerated

Although federal courts lack inherent authority to order restitution, see United States v. Casamento, 887 F.2d 1141, 1177 (2d Cir. 1989), they may do so when "explicitly empowered by statute," United States v. Farr, 419 F.3d 621, 623 (7th Cir. 2005); see also United States v. Balentine, 569 F.3d 801, 802 (8th Cir. 2009); United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008); United States v. Cohen, 459 F.3d 490, 498 (4th Cir. 2006); United States v. Mitchell, 429 F.3d 952, 961 (10th Cir. 2005); United States v. Gilberg, 75 F.3d 15, 22 (1st Cir. 1996); United States v. Snider, 957 F.2d 703, 706 (9th Cir. 1992). Here, neither party disputes that on September 15, 1993, when a judgment of conviction was first entered in Kyles's case, the district court was statutorily authorized by the VWPA to order restitution, see 18 U.S.C. § 3663(a)(1), and to set a schedule of installment payments, see id. § 3663(f)(1), thereby overriding the statutory presumption that restitution would be paid "immediately," id. § 3663(f)(3). Such a schedule may require a defendant to pay restitution "for the terms of both incarceration and supervised release." United States v. Kinlock, 174 F.3d 297, 300 (2d Cir. 1999). Section 3663(g) states that restitution "shall be a condition" of any term of probation or supervised release, and that a

8

court "may revoke . . . or modify" such condition "or hold a defendant in contempt" for failure to comply. What Kyles asserts on this appeal is that the district court lacked statutory authority under the VWPA to modify his restitution schedule while he remained incarcerated.[7] He submits that the challenged orders therefore constituted impermissible modifications of his sentence. We are not persuaded.

1. The Challenged Orders Did Not Alter the Restitution Component of Kyles's Sentence

It is well-established that a district court may not alter an imposed sentence, except in narrow circumstances not present here. See 18 U.S.C. § 3582(c) (permitting modification of sentence (1) upon motion by Bureau of Prisons for reduced term of imprisonment, (2) as otherwise expressly provided by statute or Fed. R. Crim. P. 35, or (3) where Sentencing Commission subsequently reduces applicable sentencing guidelines range pursuant to 28 U.S.C. § 994(o)); Fed. R. Crim. P. 35 (1993) (permitting court to correct sentence upon remand from higher court, to reduce sentence on motion of government, or to correct sentence infected by clear error within seven days of imposition); Fed. R. Crim. P. 36 (permitting court to correct clerical error in judgment); see also Poindexter v. United States, 556 F.3d 87, 89 (2d Cir. 2009); United States v. Burd, 86 F.3d 285, 289 (2d Cir. 1996). The

_____

[7] There is no doubt that such authority is now expressly recognized in the VWPA's successor statute, the MVRA, which states that a district court "may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). The government does not contend that the MVRA, which became effective some years after Kyles's 1993 sentencing, applies to this case.

challenged orders did not, however, alter Kyles's sentence. With respect to restitution, Kyles was sentenced to pay $4,133 to the bank victim of his crime of conviction. The district court has never altered this amount. To the extent it allowed Kyles to pay the sentenced amount in installments, that departure from the statutory presumption in favor of immediate restitution is not reasonably understood as a "sentence," but rather as an application of equity to performance of the pronounced sentence, providing a means for Kyles fully to compensate his victim consistent with his limited means. To the extent the challenged orders modified the restitution schedule, they only refined this application of equity; otherwise, they left untouched the pronounced amount of restitution. In these circumstances, we identify no change in sentence.

Kyles's reliance on double jeopardy precedents warrants no different conclusion. Because the Double Jeopardy Clause protects the finality of criminal judgments, see United States v. Scott, 437 U.S. 82, 92 (1978); Crist v. Bretz, 437 U.S. 28, 33 (1978), it prohibits alterations to sentences carrying a legitimate expectation of finality, see United States v. DiFrancesco, 449 U.S. 117, 136-38 (1980); United States v. Porter, 41 F.3d 68, 71 (2d Cir. 1994). But where no such expectation exists, double jeopardy does not bar a court from modifying a sentence. As the Supreme Court explained in DiFrancesco,

> The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause.

10

449 U.S. at 137; see United States v. Fogel, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in [his] sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence.").

In this case, Kyles does not – and cannot – contend that the challenged orders upset his expectation of finality in the amount of restitution he must pay. To the extent the orders altered his restitution schedule, we identify no legitimate expectation of finality in a particular payment schedule. The original judgment directed Kyles to pay restitution "on a schedule to be determined by the United States Probation Office." United States v. Kyles, No. 92 Cr. 91, Judgment (Sept. 15, 1993). Kyles can hardly claim an expectation of finality in a schedule that was never determined. This conclusion is only reinforced by the district court's own repayment schedule, directing that Kyles pay $2 per month in restitution while incarcerated, as the court specifically reserved the right to alter the schedule as circumstances warranted. See United States v. Kyles, No. 92 Cr. 91, Order Amending Judgment (Oct. 19, 1998) ("The court may adjust the amount of the monthly repayment according to the defendant's ability to pay.").

Accordingly, we identify no merit in Kyles's argument that the challenged orders altered his sentence.

2.      The Court's Authority To Modify a Restitution Schedule Inheres in 18 U.S.C. § 3663(f)

Kyles nevertheless submits that, under the VWPA, a district court may not modify a

11

restitution schedule while a defendant is still incarcerated. We disagree with Kyles's contention that explicit statutory authority is required to permit the district court to modify a schedule set under § 3663(f)(1) better to conform to a defendant's financial circumstances. Instead, we conclude that such authority inheres in § 3663(f)(1), which effectively confers equitable authority on sentencing courts to depart from the statutory presumption in favor of immediate payment of restitution. See 18 U.S.C. § 3663(f)(3). Inherent in equitable authority is the power to adjust orders when the circumstances informing them change. See generally United States v. Swift & Co., 286 U.S. 106, 114 (1932) (Cardozo, J.) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. . . . A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); accord Freeman v. Pitts, 503 U.S. 467, 487 (1992) ("The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action."); System Fed'n No. 91, Ry. Employees' Dep't v. Wright, 364 U.S. 642, 647 (1961) ("[A] sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen. The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.").

12

A district court must decide at sentencing whether to order a restitution schedule because, otherwise, the law requires restitution to be paid "immediately." 18 U.S.C. § 3663(f)(3); see also United States v. Kinlock, 174 F.3d at 301 ("When restitution cannot be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation."). But district judges "are not seers," who at the time of sentence can anticipate every circumstance that may arise affecting a defendant's economic future. United States v. Atkinson, 788 F.2d 900, 904 (2d Cir. 1986). Unless the equitable authority conferred by § 3663(f)(1) is construed to permit a court to modify a payment schedule as warranted by changed circumstances, a defendant who encounters unanticipated financial setbacks may be burdened with an unreasonable schedule. Indeed, a constitutional concern would arise if restitution orders were enforced against defendants who, through no fault of their own, could not make payment. See United States v. Brown, 744 F.2d 905, 911 (2d Cir. 1984). Authorizing courts to set a schedule of restitution payments reduces this concern while still serving the critical object of the VWPA: making crime victims whole by "requir[ing] restitution whenever possible." United States v. Porter, 41 F.3d at 70. At the same time, a crime victim may be subjected to unwarranted delays in compensation if a district court cannot accelerate a payment schedule when a defendant's financial condition proves more favorable than predicted at sentencing. The latter outcome is plainly at odds with a statute that requires immediate payment of restitution except where a court identifies equitable reasons to permit compensation to be paid in

13

installments over time.  See United States v. Brown, 744 F.2d at 911.  It would be curious to conclude that Congress thus interjected equity into the restitution process only to limit its role to the precise moment when sentence is pronounced or a violation committed.  See generally United States v. Kinlock, 174 F.3d at 300 (recognizing defendant's "continuing obligation to pay restitution as funds become available").  Accordingly, we decline to conclude from the lack of specific modification authority in the VWPA that Congress intended to preclude district courts from modifying restitution schedules imposed under that statute except for specific violations of supervised release.  To the contrary, we conclude that such authority inheres in Congress's conferral of equitable discretion on district courts to depart from § 3663's presumption in favor of immediate payment.[8]

Our conclusion finds further support in 18 U.S.C. § 3583(e)(2), which specifically authorizes a district court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release" to account for new or unforeseen circumstances.  In United States v. Lussier, we recognized that such

---

[8] We do not understand § 3663(g) to cabin a district court's modification authority to violations of restitution conditions of supervised release.  Rather, we construe that section to signal only that a district court's discretion in dealing with such violations is expansive, including the full range of responses from revocation to modification to a contempt citation. Nor do we construe the MVRA's reference to a district court's modification authority, see 18 U.S.C. § 3664(k), as a signal that Congress intended to withhold that authority under the VWPA.  Rather, we understand the successor statute to impose greater burdens on a defendant and the government to ensure that the court is apprised of changes in the defendant's financial circumstances that may warrant modification of a restitution schedule. In short, the MVRA only clarifies and strengthens what is implicit in the VWPA.

14

circumstances can include a change in the defendant's ability to pay restitution, see 104 F.3d

32, 36 (2d Cir. 1997),[9] which under the VWPA "shall be a condition" of any imposed term

of supervised release, 18 U.S.C. § 3663(g); see also United States v. Berardini, 112 F.3d 606,

610 (2d Cir. 1997) (noting that, under § 3583(e)(2), district court could modify conditions

of restitution if defendant proved unable to locate victims); cf. United States v. Miller, 205

F.3d 1098, 1100 (9th Cir. 2000) ("[B]ecause the payment of $3,000 of [defendant's] fine is

a condition of his supervised release, § 3583(e)(2) gives the district court the power to

modify that portion of the fine."). Although circumstances warranting modification in

supervised release conditions most frequently arise after supervision commences, the

statutory language is sufficiently expansive to authorize modifications at any time after

sentence is imposed. Thus, in United States v. Thomas, the Eighth Circuit observed that a

defendant "may petition for modification of his supervised release conditions before his

supervised release begins." 198 F.3d 1063, 1065 (8th Cir. 1999) (emphasis added). Further,

in United States v. Gray, that same court ruled that a defendant "commencing a long prison

term" who "is unable to satisfy the restitution order while incarcerated . . . may apply to the

---

[9] Lussier holds that § 3583(e)(2) does not authorize modification of a restitution order
on the basis of a defendant's challenge to its legality. See 104 F.3d at 34-36; see also United
States v. Jones, 238 F.3d 271, 273 (4th Cir. 2001) (holding that district court lacked authority
to amend criminal judgment to require immediate, full payment of fine even though
amendment sought to bring sentence into compliance with subsequent law). The June and
September 2006 amendments here at issue were not intended to correct any illegality in the
October 1998 restitution schedule, but only to adjust that schedule as warranted by
defendant's financial condition.

15

district court for an amended restitution order better suited to his post-release financial circumstances, <u>before</u> he begins supervised release." 175 F.3d 617, 618 (8th Cir. 1999) (emphasis added).

In sum, it is of no moment that § 3663(f)(1) does not provide the specific authorization to modify restitution schedules for incarcerated defendants that Kyles demands. For the reasons stated, we conclude that such authority inheres in the VWPA's conferral of equitable authority on district courts and is further reinforced by § 3583(e)(2).

C.    <u>The Delegation of Judicial Authority to the Bureau of Prisons To Modify Kyles's Restitution Schedule Was Impermissible</u>

Although we conclude that the district court was authorized to modify Kyles's restitution schedule to reflect his financial condition even while he was incarcerated, in the final order at issue on this appeal, the district court did not itself modify its prior $2-per-month schedule. Rather, it ordered that Kyles's restitution payments "be increased in accordance with the guidelines of the [IFRP]." <u>United States v. Kyles</u>, No. 92 Cr. 91, Order on Increase in Restitution Payments, at 3 (Sept. 1, 2006). Our decision in <u>United States v. Mortimer</u>, 94 F.3d 89 (2d Cir. 1996), requires us to vacate this order.

In <u>Mortimer</u>, we reviewed an order requiring a defendant to participate in the IFRP and to "make restitution in accordance with the policies of that program." <u>Id.</u> at 90 (internal quotation marks omitted). Because inmates participating in the IFRP make restitution payments according to a schedule that they develop "on an ad hoc basis with the assistance of . . . prison staff," we concluded that the challenged order accorded the Bureau of Prisons

16

discretion to alter a restitution schedule and, therefore, constituted an impermissible delegation of judicial power. Id. at 90-91 ("Because payment schedules under the IFRP are not fixed according to a predetermined formula, but rather vary at the discretion of the prison staff, the delegation in this case is just as real as [the delegation to a probation officer rejected] in [United States v.] Porter.").[10]

There is little to distinguish the challenged order in this case from that held invalid in Mortimer. We therefore vacate the district court's September 1, 2006 order and remand for further proceedings. In doing so, we adhere to our observation in Mortimer that a district court may "draw upon the IFRP guidelines . . . in fashioning an order of restitution," but we highlight the two conditions that accompanied that observation: (1) the court's order must itself specify the amounts to be paid, and (2) the discretion to depart from that order cannot be vested in prison officials. Id. at 91 n.2 (observing that court may "draw upon the IFRP guidelines . . . in fashioning an order of restitution that specifies the amounts to be paid, so long as discretionary authority to depart from the court's order is not vested in prison officials"); accord United States v. Kinlock, 174 F.3d at 301. In short, because the terms of

_____

[10] Some of our sister circuits have held otherwise. See United States v. Sawyer, 521 F.3d 792, 796 (7th Cir. 2008) (identifying no error under MVRA in "leaving payment [of restitution] during imprisonment to the [IFRP]"); Weinberger v. United States, 268 F.3d 346, 359-61 (6th Cir. 2001) (permitting court to set total amount of restitution under VWPA and then to "delegat[e] the schedule of payments to the Probation Office" or "to the Bureau of Prisons through the IFRP"); Montano-Figueroa v. Crabtree, 162 F.3d 548, 548 (9th Cir. 1998) (rejecting claim that IFRP "intrudes upon the sentencing court's responsibility to determine the amount and timing of fine payments").

17

a restitution scheduling order must be those of the court, not another entity, a court cannot import wholesale regulations or guidelines that vest others with discretion to alter a defendant's payment schedule. Because that is what occurred in this case, we vacate the September 1, 2006 order increasing Kyles's restitution payments in accordance with IFRP guidelines, and we remand with instructions for the district court to establish a reasonable restitution schedule. On remand, Kyles should be afforded notice and an opportunity to respond to any schedule under consideration by the court.

## III.   Conclusion

In sum, we conclude:

1.   Modification of a schedule for payment of restitution, without any change in the total amount of restitution ordered, is not a change in sentence.

2.   Defendant had no legitimate expectation of finality in his restitution schedule so as to raise double jeopardy concerns about modifications to that schedule.

3.   Although the VWPA, in contrast to the MVRA, does not explicitly reference a court's authority to modify a restitution schedule on account of a defendant's changed financial circumstances, such authority is implicit in the statute's conferral of effective equitable power to a court to depart from the statutory presumption in favor of immediate payment of restitution.

4.   The final modification order at issue on this appeal, directing that defendant's restitution payments be increased in accordance with IFRP guidelines,

18

impermissibly delegates judicial power to the Bureau of Prisons.

Accordingly, the district court's September 1, 2006 order is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this opinion.