23-6597-cr
*United States of America v. Barrett (Pincus)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of November, two thousand twenty-four.

PRESENT:
> BARRINGTON D. PARKER,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges*,
> CAROL BAGLEY AMON,
> > *District Judge*\*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                23-6597-cr

---

\* Judge Carol Bagley Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

PHYLLIS PINCUS,

*Defendant–Appellant*.[**]

| | |
|---|---|
| FOR DEFENDANT-APPELLANT: | JOHN S. WALLENSTEIN, Law Office of John S. Wallenstein, Garden City, NY. |
| FOR APPELLEE: | WILLIAM CAMPOS (David C. James, Nicholas J. Moscow, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 25, 2023, is **AFFIRMED**.

Defendant-Appellant Phyllis Pincus ("Pincus") appeals from the district court's May 25, 2023, judgment of conviction following her guilty plea to conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  The district court principally sentenced Pincus to four months' imprisonment, three years of supervised release, and restitution in the amount of $213,812.11.

---

[**] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

2

On appeal, Pincus's only contention is that the district court's calculation of restitution was erroneous because: (1) the government failed to prove that Pincus directly and proximately caused the loss amount; and (2) the district court credited the government's purportedly flawed method of calculating restitution. We disagree. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

Pincus owned two pharmacies in West Nyack and New City, New York ("Clarkstown Pharmacy I" and "Clarkstown Pharmacy II," collectively, "the pharmacies"). The pharmacies dispensed various prescription drugs and submitted claims for reimbursement to insurers like Medicare, Medicaid, and Fidelis Care, a managed care organization which administers Medicare and Medicaid claims.

Until their divorce in May 2016, Pincus was married to co-Defendant Andrew Barrett, a licensed pharmacist who owned a pharmacy in Queens, New York. On May 25, 2016, Barrett pleaded guilty to health care fraud and tax fraud for submitting false Medicare and Medicaid claims. *See* Minute Entry for Change of Plea, *United States v. Barrett*, No. 15-CR-00103-KAM, (E.D.N.Y. May 25, 2016), ECF No. 109. The district court sentenced him to forty-three months' incarceration, three years of supervised release, forfeiture in the amount of $2,700,000.00, and restitution in the amount of $3,436,192.80. *See* Judgment, *United States v. Barrett*, No. 15-CR-00103-KAM, (E.D.N.Y. Sept. 16, 2016),

3

ECF No. 131. As part of his conviction, Barrett was excluded from participating in federal healthcare programs—including Medicare and Medicaid—for twenty-three years.

In November 2018, Barrett transferred into a residential reentry program that permitted him to leave custody for portions of the day. After his transfer, Barrett would drive with Pincus—who was not a pharmacist—to the pharmacies to assist her with the submission of reimbursement claims to Medicare and Medicaid through Fidelis Care. Because Barrett was not permitted to participate in federal healthcare programs, he accessed the pharmacies' computers using a third-party pharmacist's credentials. Barrett then helped submit claims for reimbursement, both for medications that were and were not dispensed to customers.

Both Pincus and Barrett were arrested for this scheme, and on March 12, 2020, Barrett pleaded guilty to Count One of the Indictment, which charged him with health care fraud in violation of 18 U.S.C. § 1347. On November 30, 2021, Pincus pleaded guilty to Count Five of the Indictment, which charged her with conspiracy to defraud the United States in violation of 18. U.S.C. § 371.[1]

Pincus and the government then contested the proper restitution amount, and in lieu of a *Fatico* hearing, the parties submitted additional briefing on the issue. The government asserted that it could not precisely measure the amount of loss because

---

[1] Pincus's plea agreement contained an appeal waiver. That waiver, however, does not preclude a challenge to the restitution award.

Barrett used a third-party pharmacist's credentials to submit claims for reimbursement, and thus, the government could not accurately determine which claims Barrett filed. Instead, the government opted to calculate a subset of the loss, namely, the false claims for reimbursement Barrett submitted that the pharmacies did not dispense to patients.[2] To determine this figure, the government calculated the difference between the dollar amount of claims submitted for reimbursement to federal insurance programs and the dollar amount of drugs that the pharmacies purchased from wholesalers during the period of the Indictment.

After conducting this analysis, the government found that each pharmacy claimed to dispense more drugs than they bought from wholesalers, culminating in a $57,692.46 shortage in Clarkstown Pharmacy I and a $156,119.65 shortage in Clarkstown Pharmacy II, totaling $213,812.11. The district court credited the government's calculation and ordered Pincus to pay $213,812.11 in restitution.

## DISCUSSION

This Court reviews a district court's "order of restitution for abuse of discretion." *United States v. Rainford*, 110 F.4th 455, 489 (2d Cir. 2024); *see also United States v. Grant*, 235 F.3d 95, 99 (2d Cir. 2000) (internal quotation marks omitted) (explaining that review of restitution orders is "extremely deferential"). The district court abuses its discretion

---

[2] As discussed *infra*, the record does not indicate that any other person aside from Barrett submitted claims for drugs not actually dispensed. Accordingly, this subset of fraudulent claims is only attributable to him.

when its decision "rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013) (internal quotation marks omitted). The government bears the burden to establish the amount of restitution and any dispute about the proper amount shall be resolved by a preponderance of the evidence standard. *See id*. at 195.

### I. Direct and Proximate Causation

Pincus contends that she did not directly and proximately cause the loss attributed to her because although she sought Barrett's help with filing claims for reimbursement, "she had no idea" that Barrett would file false claims. Appellant's Br. at 13–14. We find this argument unpersuasive—whether Pincus was aware that Barrett would file false claims is not relevant to the causal inquiry.

Under the Mandatory Victims Restitution Act ("MVRA"), which authorizes a district court to order restitution, a "victim" is one who was "directly and proximately harmed as a result of the commission of [the] offense." 18 U.S.C. § 3663A(a)(2). "[R]estitution may be imposed . . . for losses arising from the specific conduct that is the basis of the offense of conviction," and where, as here, the offense is a conspiracy, the court looks to "the defendant's criminal conduct in the course of that conspiracy as the basis for restitution." *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (internal quotation marks omitted). When calculating restitution for a conspiracy conviction, we

6

have held that loss may be calculated by the acts of the defendant as well as "losses flowing from the reasonably foreseeable actions of that defendant's co-conspirators."[3] *Id.* (internal quotation marks omitted).

Through her participation in the conspiracy, Pincus directly and proximately caused the loss that resulted in the order of restitution. Pincus's conduct was a "necessary factor in bringing about the victim's harm." *Id.* at 229. Pincus admitted in her plea allocution that she "agreed with [her] former husband, Andrew Barrett, to allow him [] to access the pharmacy computers to assist in the submission of claims," even though she "knew that [] Barrett had a prior felony conviction for healthcare fraud and was therefore excluded from participation in or access to Medicare or Medicaid." App'x 78–79. The evidence established that she drove him to her pharmacies so he could submit claims to Medicare and Medicaid using one of her employee's credentials. Therefore, without Pincus's involvement in the scheme, Barrett would not have been able to file any fraudulent claims, both for medications that were or were not dispensed. And given that Pincus knew of Barrett's prior conviction for Medicare and Medicaid fraud but let him file claims at her pharmacy anyway, it was reasonably foreseeable that he might file false claims. Accordingly, as *Goodrich* makes clear, her conduct directly and proximately caused the loss stemming from Barrett's false claims. *See Goodrich*, 12 F.4th at 228.

---

[3] Because restitution may be calculated from the losses caused by a co-defendant, the discussion *infra* regarding the method for calculating restitution focuses on Barrett's fraudulent claim submissions.

7

**II. Restitution Calculation**

Pincus also argues that the government's method of calculating restitution by measuring the pharmacies' inventory shortfall suffered from various flaws and is thus unreliable. We are unconvinced.

"Because the purpose of restitution is essentially compensatory, and because the MVRA itself limits restitution to the full amount of each victim's loss, a restitution order must be tied to the victim's actual, provable loss." *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012) (internal quotation marks and citations omitted). When calculating the amount of restitution, "we have never used the word 'actual' in this context to mean 'mathematically precise.' . . . To the contrary, our case law reflects the settled understanding among courts of appeals that a 'reasonable approximation' will suffice, especially in cases in which an exact dollar amount is inherently incalculable." *Gushlak*, 728 F.3d at 195–96; *see also id.* at 196 ("We reiterate that the MVRA requires only a reasonable approximation of losses supported by a sound methodology. . . . So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." (internal quotation marks and citation omitted)); *see also Rainford*, 110 F.4th at 490–91 (explaining that restitution calculations "may be based on guesswork, or even a hunch") (internal quotation marks omitted).

As an initial matter, we credit the government's assertion that it could not precisely calculate the total amount of loss considering that Barrett used a third-party pharmacist's credentials to file false claims.[4] Rather than attempt to calculate the total loss, the government reasoned that it would determine restitution based off an inventory shortage calculation because Barrett was the only one known to have submitted reimbursement claims for drugs that the pharmacies never distributed to customers. We are satisfied that the government's calculation represents a reasonable estimate of the total loss because the calculation "did not include the claims [Barrett] submitted for pills actually dispensed, despite the parties' agreement that those claims would properly be included in the estimate if they could be captured." Government's Br. at 14.

This conservative calculation of the restitution amount provides a reasonable estimate of this subset of loss. As noted above, only Barrett was known to have filed false claims which would have caused the inventory shortage. Moreover, each of Pincus's arguments about the unreliability of the government's calculation method are either speculative or unsupported in the record. Nothing else in the record indicates that the government's methodology, which the district court relied on, contained any errors or

---

[4] Pincus contends that when calculating restitution, the government could have used video surveillance footage to compare the times Barrett appears on camera at the pharmacies' computers with the times that the Pharmacies filed reimbursement claims. To Pincus, this method of calculating restitution is the only way that the government could accurately measure the loss amount. As the government noted and the district court credited, neither the videos nor the claims submitted were time-stamped to enable such a method of calculation.

was otherwise inaccurate.  *See Rainford*, 110 F.4th at 490–91 (finding no abuse of discretion where court's methodology did not rely on clearly erroneous facts).  The district court did not abuse its discretion in imposing restitution in the amount of $213,812.11.

*    *    *

We have considered Pincus's remaining arguments and conclude that they are without merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court