17-3328 (L)
*United States v. Benton*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of March, two thousand nineteen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges*,
> MARGO K. BRODIE,
> > *District Judge*.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                    17-3328 (L), 17-3339 (Con)

JEFFREY BENTON, AKA JT, AKA TALLMAN, AKA FRESH,

> *Defendant-Appellant*.

_____

For Defendant-Appellant:          John A. Kuchera, Waco, TX.

For Appellee:                              Jocelyn Courtney Kaoutzanis, Sandra S. Glover, Assistant United States Attorneys, *for* John H.

---

* Judge Margo K. Brodie, of the United States District Court for the Eastern District of New York, sitting by designation.

Durham, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's October 16, 2017 judgment of conviction is **AFFIRMED**. We **VACATE** the district court's December 21, 2017 order as to restitution and **REMAND** for further proceedings consistent with this order. The Defendant-Appellant's remaining claim as to his sentence is **DISMISSED**.

Defendant-Appellant Jeffrey Benton ("Benton") appeals from the district court's judgment, following a guilty plea pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), convicting him of conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; engaging in a pattern of racketeering, in violation of 18 U.S.C. § 1962(c); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and imposing a 480-month sentence. Benton's plea agreement, which the district court accepted on October 4, 2017, contains an appeal waiver providing in relevant part that "[t]he defendant agrees not to appeal . . . the conviction or sentence imposed by the [district court] if that sentence does not exceed 480 months' imprisonment, a five-year term of supervised release, and a fine of $250,000." Gov't App'x 107. In addition, Benton challenges the district court's restitution order, entered pursuant to the Mandatory Victim Restitution Act (the "MVRA"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

**Double Jeopardy Claim**

Benton first argues that the drug conspiracy charge to which he pled guilty is jeopardy-barred as it punishes the same conduct to which he previously pled guilty in 2012. "[T]he rights afforded by the Double Jeopardy Clause are personal and can be waived by a defendant." *United States v. Mortimer*, 52 F.3d 429, 435 (2d Cir. 1995). Although a "double jeopardy claim may be asserted on appeal notwithstanding the plea of guilty," *United States v. Sykes*, 697 F.2d 87, 89 (2d Cir. 1983) (citing *Menna v. New York,* 423 U.S. 61 (1975)), we have determined that this exception to the waiver rule applies only "when a double jeopardy claim is so apparent either on the face of the indictment or on the record existing at the time of the plea that the presiding judge should have noticed it and rejected the defendant's offer to plead guilty to both charges." *United States v. Kurti*, 427 F.3d 159, 162 (2d Cir. 2005); *see also United States v. Broce*, 488 U.S. 563, 574-75 (1989).

Even assuming *arguendo* that Benton's appeal waiver does not foreclose him from pressing the instant claim on appeal, we agree with the government that Benton's case does not fall within either of the exceptions to the rule that "a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two separate crimes." *Broce*, 488 U.S. at 570. The indictments are far from facially duplicative: the indictment for the 2012 case described Benton as a participant in a heroin conspiracy in New Haven, while the more recent indictment described Benton's part in a conspiracy distributing cocaine base and gun-running between Maine and Connecticut. The only overlap between the 2012 case and the instant case is temporal. When entering his guilty plea, Benton was advised that all his pending motions—including his double jeopardy motion—would be denied as moot. Benton responded that he understood that his pending motions would be denied as moot and that

3

he would not receive a ruling. We thus conclude that "the narrow exception to the waiver rule does not apply in this case" and that the judgment of conviction should be affirmed. *Kurti*, 427 F.3d at 162.

**Sentencing Claim**

If we decline to find that his drug conspiracy charge was jeopardy-barred, Benton nevertheless contends that the district court erred at sentencing and that he is entitled to press this argument on appeal. The appeal waiver in Benton's plea agreement, however, squarely forecloses this claim. "Waivers of the right to appeal a sentence are presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). Nevertheless, "[s]uch waivers may be avoided . . . if the Government breaches the plea agreement," *United States v. Garcia*, 166 F.3d 519, 521 (2d Cir. 1999), or, in the case of agreements entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), when the district court declines to sentence a defendant in conformance with the agreement. *See* Fed. R. Crim. P. 11(c)(5) (providing that if the district court rejects an 11(c)(1)(C) plea agreement, it must "give the defendant an opportunity to withdraw the plea"). Neither circumstance is present in this case.

Benton first contends that the government breached the plea agreement by responding to inquiries by the district court as to whether a leadership enhancement applied to several of his predicate offenses. We disagree. The plea agreement explicitly provides that "[i]n the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternative calculations." Gov't App'x 107. This case falls squarely within the ambit of our decision in *United States v. Riera*, which reviewed similar behavior by government attorneys operating under an identically-worded

4

provision. 298 F.3d 128, 134 (2d Cir. 2002). As in *Riera*, the government attorney here made no mention of the leadership enhancement until the district court specifically asked for his opinion on the enhancement's applicability, and the plea agreement stipulated to his ability to respond to inquiries from the court about differing sentencing calculations. On these facts, we identify no breach.

We also disagree with Benton's argument that the district court rejected his agreement and thus he should be permitted to challenge his sentence on appeal. His first assignment of error—that the agreement was rejected due to the district court's determination that offense levels different from those specified in the agreement should apply—is inconsistent with the language of the plea agreement. Benton specifically agreed not to appeal a sentence within the binding range "even if the Court imposes such a sentence based on an analysis different from that specified" in the agreement itself. Gov't App'x 107. The district court's sentence was within the agreed-upon range, and thus its different analysis regarding his adjusted offense level does not constitute a rejection of the agreement. Similarly, the language of the plea agreement belies Benton's arguments that the district court "effectively" rejected the agreement by sentencing him to a 480-month consecutive sentence with no credit for time served under his 2012 sentence, or by declining to find the 2012 case "relevant conduct" at sentencing. Given that Benton reserved his right to argue that his new sentence should be imposed concurrently with his 2012 sentence and that he should get credit for time served, while the government agreed to abide by the district court's decision, clearly the parties understood that the district court had discretion to decide those questions either way. Benton specifically agreed, moreover, "not to appeal . . . the [district court's] imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence." Gov't App'x 107.

5

For the above reasons, we conclude that Benton's appeal waiver remains enforceable. We therefore decline to entertain his argument that the district court erred in calculating and imposing his sentence.

**Restitution Order**

Lastly, Benton challenges the district court's order of restitution under the MVRA, which the government concedes he is not barred from contesting on appeal. The district court ordered that Benton (jointly and severally with several other co-conspirators) pay restitution for funeral expenses for several individuals, and provided that if these expenses were not paid by the time Benton left prison, they would be due in monthly increments of at least $100. Benton argues that we cannot approve the district court's order, as it "has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction." *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006). Benton also contests the provision of the order that made the restitution "due and payable immediately," even though he has no assets.

"[W]e review a district court's order of restitution under the MVRA for abuse of discretion." *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012). However, "[w]e review *de novo* the district court's conclusion that a person is a victim for purposes of the restitution statutes." *United States v. Lazarenko*, 624 F.3d 1247, 1249 (2d Cir. 2010).

While Benton is correct that we have refused to enter restitution to alleged victims who were also co-conspirators in the crime of conviction, *see e.g. United States v. Lazarenko*, 624 F.3d 1247, 1252 (2d Cir. 2010), that prohibition does not apply here. While a victim may be a co-conspirator as to some parts of the conspiracy, where a victim's intentions are not *in pari materia* with the defendant, restitution should not be denied. *See United States v. Ojeikere*, 545

6

F.3d 220, 223 (2d Cir. 2008). As the government rightly observed, "[r]estitution was not awarded for [the individuals'] drug dealing or gang membership, but rather for their funeral expenses." Gov't Brief at 65. Even if the alleged victims engaged in criminal activity with Benton and his gang, that did not make them co-conspirators *in the offense of their own murders*. *See Ojeikere*, 545 F.3d at 222-23 ("Whatever illegal scheme the victims thought they were involved in, it was not a scheme to lose their *own* money . . . ."); *see also United States v. Sanga*, 967 F.2d 1332, 1335 (9th Cir. 1992) ("Any criminal complicity in the conspiracy which [the victim] might bear stopped at the point at which she became the object of, rather than a participant in the criminal goals of the conspirators."). We thus uphold the district court's decision to order Benton to pay restitution for funeral expenses.

Nevertheless, we agree with Benton that the district court erred in ordering restitution "due and payable immediately," with no schedule in contemplation of his inability to pay. The MVRA requires that once the court has determined the amount of restitution, the restitution order should provide a schedule "in consideration of the financial resources and other assets of the defendant." 18 U.S.C. § 3664(f)(2)(A). According to his pre-sentence report, Benton has no reported assets and no ability to pay a fine, a fact the district court recognized when it declined to impose any fine on Benton. The district court's order makes payment due upon entry of judgment and also provides that any unpaid amount due at Benton's release from prison "will be paid in installments of not less than $100, payable on the 1st of each month." Gov't App'x at 319. However, it makes no provision for the more than forty years that Benton has been sentenced to prison, other than noting that the Bureau of Prisons may implement a restitution schedule in accordance with its Inmate Financial Responsibility Program. In *United States v. Kinlock*, we vacated a similar order of restitution on the grounds that "[w]hen restitution cannot

7

be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation." 174 F.3d 297, 301 (2d Cir. 1999). As in *Kinlock*, we recognize that while Benton must pay restitution whenever funds become available, clearly "that time is not now," and thus "the district court should develop a reasonable payment scheme for his term of incarceration *as well as* supervised release." *Id.* (emphasis added).

We have considered Benton's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court as to Benton's conviction, and **DISMISS** Benton's claims as to his prison sentence. We **VACATE** the district court's restitution order and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8